## LAND DAMAGED BY WATER DUE TO CHANGE OF GRADE OF STREET.

Circuit Court of Summit County.

### JOACHIM EVERS v. CITY OF AKRON.

Decided, October 12, 1912.

*Waters—Municipal Corporation Liable for Increasing Flow of Surface Water.*

A municipal corporation is liable to a land owner for damages resulting from an increased flow of surface water upon his land, caused by a change in street grades by which water is brought from another street to that upon which the land abuts and from which it flows upon the land.

*Hollaway & Chamberlain,* for plaintiff in error.
*J. Taylor,* City Solicitor, and — *Kemfield,* contra.

WINCH J.; MARVIN, J., and NIMAN, J., concur.

The plaintiff sued the city for damages to his property abutting on West Tallmadge avenue in the city of Akron, just west of the intersection therewith of Cuyahoga street, occasioned by the change of grade of Cuyahoga street, which street, he claims, formerly carried the surface water accumulating and flowing thereon, away from said intersection, but after the change in grade, carried it toward said intersection and to and upon plaintiff's premises, washing gulleys in West Tallmadge avenue in front of plaintiff's premises and through his premises, filling

up his well and depositing so much gravel upon his land as to make it unfit for cultivation.

The evidence introduced by plaintiff shows that his premises are much lower than the grade of either Cuyahoga street, which runs north and south, or West Tallmadge avenue, which runs east and west. It was the grade of Cuyahoga street that was changed, not the grade of the street upon which plaintiff's premises abut.

Evidence was also introduced by the plaintiff tending to show that by the improvement of Cuyahoga street surface water which was accustomed theretofore to flow away from plaintiff's premises, was accumulated and caused to flow toward and upon his premises and that he had suffered damage therefrom.

At the close of plaintiff's evidence the court directed a verdict for the defendant, upon the theory, as we are advised, that surface water is a common enemy, which the lot owner may fight by raising his lot to grade, or in any other proper manner, and that the municipality has the undoubted right to bring its streets to grade, and has as much power to fight surface water in its streets as the adjoining private owner.

This doctrine has some endorsement in *Dillon on Municipal Corporations*, 5th Edition, Sections 1731 to 1745 inclusive. It also has some sanction in the case of *Springfield* v. *Spence*, 39 O. S., 665, see page 671.

*Farnham on Waters* denies there is any such rule, and says that its origin and scope are shrouded in mystery.

The latter authority is quoted with approval by Judge Summers, in the case of *Mason* v. *Commissioners*, 80 O. S., 151, where he also collects many cases on the flow of surface waters. He also says (page 180):

"The law in this state is in harmony with the cases that have been quoted from at such length and they have been quoted from at such length only because of the importance of the questions presented, and because of the seeming difficulty many times in applying the law to the facts."

Let us examine some of his quotations.

"The owner of the upper ground has no right to make any *excavations* or drains by which the flow of water is directed from

its natural channel and a new channel made on the lower ground; nor can he collect into one channel waters usually flowing off into his neighbor's fields by several channels, and thus increase the wash upon the lower fields.''

"If the owner of the upper ground wrongfully direct an unnatural quantity of water upon the ground of a lower neighbor, by collecting several streams together and discharging them at one place, or by any other means, the neighbor below may have an action against him.''

"The diversion by a land owner of surface water, collecting on his land from rain and melting snow, out of the course which nature has provided for it, in such a way as to cause it to flow upon the land of another where it has not flowed before, is an actionable trespass.''

"While the owner of the lower lands shall receive all water that naturally flows from the next higher lands, the owner of the higher lands may not open or remove natural barriers. and let on such lower lands water that would not otherwise naturally flow in that direction.''

"It is now well settled that neither a corporation nor an individual can divert water from its natural course so as to damage another.''

"A lower tenement is under a natural servitude to a higher one to receive from it all the surface water, accumulating from falling rains and melting snow, or from natural springs that *naturally* flow from it to and upon the lower one. This advantage of the higher tenement is a part of the property of the owner of it, and he is not indebted to the lower tenement therefor.''

This last quotation is from the syllabus of the case of *Blue* v. *Wentz,* 54 O. S., 247; the syllabus of the case of *Mason* v. *Commissioners,* 80 O. S., 151 conforms to it.

The record of the case at bar tends to show that the defendant changed the natural flow of the water on Cuyahoga street, collected into one channel water that usually flowed off upon the lower lands by several channels and discharge it at one place, thereby materially increasing the wash upon plaintiff's fields. The record seems to show that the damage complained of by

plaintiff was occasioned by water that would not naturally have flowed in his direction.

As he was not an abutter upon the street, the grade of which was changed, he never had an opportunity to be compensated for any damage that change of grade might occasion him.

It is the settled law of this state, though Dillon also criticizes the Ohio cases which enunciate it, that "a municipal corporation, like an individual, is liable for injuries resulting to the property of others from the acts of such corporation, though acting within the scope of its corporate authority, and without any circumstances of negligence or malice." *McComb* v. *Akron*, 15 Ohio, 474.

It is therefore liable for damages resulting from a violation of those rules of law which concern the flow of surface waters, the same as any individual might be liable.

The petition and the evidence in this case would have been sufficient to warrant its submission to the jury, if the defendant had been an individual. This being so, the fact that the defendant was a municipal corporation did not warrant the case being taken from the jury.

A case something like this is reported in 12 C.C.(N.S.), 220, where the city of Cincinnati was held liable for unnecessarily collecting and casting upon plaintiff's premises more surface water than would naturally flow thereon. There an eight-inch pipe was emptied by the city on the hillside back of the plaintiff's premises. It was probably a drain for surface water from some other street.

Judgment reversed and cause remanded for further proceedings.